UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 2: 09-68-DCR |
| V. | ) ) | |
| SHAWN M. RICE, | ) ) | **MEMORANDUM OPINION** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On October 23, 2009, Defendant Shawn Rice moved the Court to suppress from evidence a firearm recovered in connection with his arrest. [Record No. 17] A hearing on that motion was held on November 3, 2009. At the conclusion of the suppression hearing, the Court made oral findings supporting its conclusion that the Defendant's motion should be denied. This Memorandum Opinion supplements those findings.

**I.   Relevant Facts**

Defendant Shawn Rice is a convicted felon who is prohibited from possessing a firearm.[1]

On July 11, 2009, an anonymous call was placed to the Covington Police Department advising

---

[1] It appears that the Defendant has three prior felony drug convictions. On May 17, 2002, he was sentenced by this Court to a term of imprisonment of 110 months in connection with one of the convictions. *See United States v. Rice*, U.S. Dist. Ct., E.D. of Ky., Northern Div., at Covington, Criminal No. 2: 01-61-JBC. [Record Nos. 67, 178] However, on November 24, 2008, Chief Judge Jennifer B. Coffman reduced Rice's term of imprisonment to 92 months based on recent amendments to the United States Sentencing Guidelines relating to crack cocaine convictions. [Record No. 168] This action resulted in Rice's release from imprisonment on December 1, 2008. The present charges have resulted in an alleged supervised release violation in connection with this earlier conviction. [Record Nos. 174, 176]

that shots had been fired in the vicinity of Robbins and Greenup Streets. The caller identified the suspect by name (Shawn Rice) and described him as a black male with light-colored skin and wearing a black shirt, red shorts and gym shoes. The caller also indicated that Rice was wearing a black mask. The information was relayed to the dispatcher who advised officers of the information provided by the caller.

The dispatch log from the police department indicates that the following information was provided to officers in the area:

    21:57:06    SHOOTS [sic] FIRED IN THE AREA
    21:58:58    SHAWN RICE HEADED EST ON 9TH FROM GREENUP LI9GHT [sic] SKINNED BLACK MASKED RED SHORTS BLACK SHIRT GYM SHOES

[*See* Record No. 17; attached exhibit.]

Mark Richardson[2] is a third-shift Patrol Officer with the Covington Police Department. Officer Richardson was at police headquarters at the time the call regarding "shots fired" was received. After receiving this information from the dispatcher, Officer Richardson traveled in his patrol car to the area identified by the caller. Other officers in the area also began looking for the suspect. During the search for Rice, neither Richardson nor the other officers were aware that the Defendant was a convicted felon. Further, no testimony or other evidence has presented indicating that the area of the search was a high crime area.

---

[2]  Officer Richardson was the only witness called during the November 3rd hearing. Officer Richardson has nearly eight years experience as a Covington police officer and over six and one-half years experience with the Kenton County Police Department. He is presently assigned as a K-9 specialist. In addition to vehicle patrol with his K-9 partner Cody, Officer Richardson's duties include field training of new recruits.

Shortly after the search for the suspect began, Richardson received information from another officer identifying a person matching the description given by the caller. Officer Richardson immediately traveled to the location where he encountered Defendant Rice. Richardson testified that the area of his initial encounter with Rice was well-lit. Upon seeing the Defendant, Officer Richardson parked his marked patrol car along the street, exited the vehicle and stated in a loud voice, "Sir, may I talk to you for a minute." The officer parked his vehicle on the same side of the street as the Defendant and approximately ten to fifteen yards from him; however, Richardson did not activate the vehicle's lights or siren. According to Officer Richardson, in response to his request, Rice made eye contact but did not respond verbally. Instead, the officer described Rice's actions as looking around for an escape route. After Officer Richardson again asked to speak with Rice, Rice ran away in a full sprint. Officer Richardson followed.

Ordinarily, when conducting a foot pursuit of a suspect, Officer Richardson does not draw his handgun due to obvious safety concerns. However, on this occasion, Richardson testified that his gun was drawn for several reasons. First, the suspect was believed to have a gun. Second, Officer Richardson saw Defendant Rice placed his hands in the front of his shorts as he began to run. Further, Rice did not remove his hands from his waistband as he attempted to flee. This action indicated to Officer Rice that the suspect may be attempting to use a firearm to further his escape. Thus, for his own safety and for the safety of the community, Officer Richardson initially drew his weapon as he pursued Rice on foot. Officer Richardson admitted

during cross-examination that he did not actually observe Rice in possession of any type of firearm prior to or during the course of the foot pursuit.

The chase was relatively brief. However, on several occasions during the course of the pursuit, Officer Richardson directed Rice to stop and did so in a loud voice. On each occasion, Rice ignored the officer's instructions of "stop, police." Officer Richardson testified that after chasing Rice for approximately one block, he was able to transition from his handgun to his taser. And when he was approximately 15 feet away, Richardson discharged his taser, striking Rice in the back near the suspect's right thigh and right shoulder blade. Rice immediately fell to the pavement, striking his head.

Richardson continued to give Rice verbal commands not to move until other assisting officers arrived at the scene. Thereafter, Officer Richardson and another assisting officer (Donaldson) located a 9 mm Ruger semiautomatic handgun approximately six inches from Rice's feet. Richardson's report indicates that, after observing the handgun, he requested a criminal history check of the Defendant and was advised that Rice was a convicted felon.[3] Rice was subsequently taken to St. Elizabeth Hospital and treated for the injuries sustained at the conclusion of the pursuit. Although photographs were taken following the arrest they were not offered as exhibits during the November 3, 2009 hearing.

During initial questioning by counsel for the United States, Officer Richardson testified that he did not recall being informed by police dispatch that shots had been fired by the suspect.

---

[3] The Uniform Citation attached as an exhibit to the Defendant's Motion to Suppress reflects that Rice was arrested and charged with (1) possession of a handgun by a convicted felon, (2) fleeing and evading, and (3) resisting arrest. [*See* Record No. 17; attached exhibit.]

Instead, he testified that he only recalled that the call indicated a "person with a gun." However, after reviewing the call from dispatch, Officer Richardson's memory was refreshed and he confirmed that, in fact, the dispatcher had relayed to him and the other officers responding to the call that the suspect had discharged the weapon. The recording of the information provided by the dispatcher to the officers responding to the "shots fired" call also confirm that Officer Richardson had this information at the time he responded. The Court credits the refreshed testimony of Officer Richardson as being accurate and truthful.

## II.     Legal Analysis

In its response to the Defendant's motion to suppress, the United States correctly points out that, under the Fourth Amendment, there are three types of permissible encounters between police officers and citizens: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; (2) a temporary detention or *Terry*[4] stop which must be predicated upon "reasonable suspicion"; and (3) arrests which must be based on probable cause. [Record No. 18, p. 2] *See United States v. Wilhoite*, 2004 U.S. App. LEXIS 2128, **10 (6th Cir., Feb. 6, 2004) (citing *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir.), *cert. denied*, 531 U.S. 881 (2000). The United States argues that, contrary to the Defendant's contention, the initial encounter in this case was a consensual encounter. Thus, Officer Richardson was not prohibited from approaching Rice to ask general questions without having reasonable suspicion of criminal activity. Simply put, such actions do not constitute a "seizure" for Fourth Amendment purposes. *Michigan v. Chesternut*,

---

[4]     *Terry v. Ohio*, 392 U.S. 1 (1968).

486 U.S. 567 (1988) (under the circumstances presented, investigatory pursuit of person by police did not constitute a seizure for Fourth Amendment purposes).

In the present case, there is no objective evidence that Officer Richardson exhibited any type of intimidating behavior prior to Rice's decision to run. Instead, the encounter was clearly consensual. *Waldon*, *id.*, at 603. Abundant case authority also supports the conclusion that, once Rice attempted to flee, Officer Richardson had reasonable suspicion to stop and detain him. *United States v. Heath*, 259 F.3d 522, 528 (6th Cir. 2001)("when a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances"). The Court acknowledges that, in making this determination, due weight must be given to the commonsense judgments reached by police officers in light of their experience and training. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

In *Florida v. Royer*, 460 U.S. 491 (1983), the Supreme Court held that, when a law enforcement officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his or her business. *Id.* at 498. Several years later, the Court addressed whether sudden flight by a person in a high crime area created reasonable suspicion justifying a *Terry* stop. *Illinois v. Wardlow*, 528 U.S. 119 (2000). In concluding that the officer has reasonable suspicion under the circumstances presented, the *Wardlow* Court addressed several of the factors that are present here.

> An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. . . . But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are

> sufficiently suspicious to warrant further investigation. . . . [M]oreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight – wherever it occurs – it the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

*Id.* at 124-25 (citations omitted).

Here, there is no evidence that Rice was approached in a high crime area. Likewise, in light of the time of year, the Court does not place any significance on the fact that the encounter occurred around 10 p.m. However, when Officer Richardson approached the person meeting the description of the suspect, Rice ran and placed his hands in the waistband of his shorts. This behavior is clearly relevant to the officer's determination to detain the Defendant based on a reasonable suspicion of criminal activity. As the Court noted in *Wardlow*,

> unprovoked flight is simply not a mere refusal to cooperate. Flight by its very nature, is not "going about one's business; it fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Id.* at 125.

The Sixth Circuit's recent decision in *United States v. See*, 574 F.3d 309 (6th Cir. 2009), also support this Court's determination that Rice's detention was appropriate under the circumstances presented. In *See*, a law enforcement officer working for the Cuyahoga Metropolitan Housing Authority (CMHA) notice the defendant and two other persons sitting in

a parked car outside a CMHA property at approximately 4:30 a.m. The officer parked his vehicle in front of the defendant's car so that he could not depart as the officer approached. As a result of the encounter, the officer searched the defendant's car and discovered a firearm with an obliterated serial number. The defendant was arrested and charged with possession of a firearm from which the serial number had been removed.

Writing for the court, Judge Moore concluded that the officer's actions constituted a seizure and that the *Terry* stop was not supported by reasonable suspicion of criminal activity. As the Court noted, at the time of the encounter, [officer] Williams "was not responding to a complaint, he did not suspect the men of a specific crime, he had not seen the men sitting in the car for an extended period of time, he was not acting on a tip, he had not seen the men do anything suspicious, and the men did not try to flee upon seeing Williams approach." *Id.* at 314. Judge Gilman also found the absence of the factors identified by Judge Moore to be dispositive. As Judge Gilman noted, "I believe that the totality of the circumstances would have provided Officer Williams with reasonable suspicion to conduct a *Terry* stop if, for example, Officer Williams has been responding to a complaint, if he had acted on a tip, if he had seen the men doing anything potentially criminal, or if the men had tried to flee as Williams approached." *Id.* at 315 (concurring opinion).

> Officer Williams had every right to investigate further, but he should have simply parked his patrol car alongside See's vehicle to carry out the investigation in a consensual manner. Instead, he parked his patrol car in such a way so as to block in See's vehicle, thus transforming the encounter into a *Terry* stop. I therefore concur, although barely so, in the conclusion that the stop was not supported by reasonable suspicion.

*Id.*

Here, the totality of the circumstances clearly establish that Officer Richardson had reasonable suspicion to detain the Defendant. First, at the time he responded to the call from the police dispatcher, Richardson was aware that an individual was believed to be armed and allegedly had fired a gun. Officer Richardson was also aware of the suspect's general description. Rice met that description. Officer Richardson encountered Defendant Rice in a well-lit area of Covington. At the time of the encounter, Officer Richardson was in uniform and driving a marked police car. Thus, there is little likelihood that the Defendant was unable to determine his status as a police officer.

Had Rice complied with Richardson's request to speak with him, or if Rice had simply walked away, the Court would be faced with a different analysis regarding whether the officer was justified in detaining the Defendant. However, that did not occur here. Instead, when asked to stop, Rice made eye contact with the officer, then looked away. Officer Richardson testified that, based upon his experience, Rice was looking for an escape route.[5] And when Richardson repeated his request, Rice responded by sprinting away.

Further, as Rice began to run, he placed both hands in the front of his shorts. Based upon his training and experience, Officer Richardson believed Rice was reaching for a firearm. And in light of the information available to Officer Richardson at the time, that belief was certainly warranted. It bears repeating that the Court does not draw this conclusion from hindsight (*i.e.*, because a firearm was subsequently found at Rice's feet at the conclusion of the pursuit).

---

[5] As noted in *Wardlow*, nervousness and evasive actions are also relevant in determining whether an officer has reasonable suspicion to conduct a *Terry* stop. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). *See also United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975), and *United States v. Saddler*, 445 F.Supp.2d 862 (S.D. Ohio, 2006).

Instead, this conclusion is based upon the totality of the circumstances which were presented at the time Officer Richardson encountered Rice and ask to speak with him. Under the circumstances, when Rice ran and placed his hands in the waistband of his shorts, what began as a consensual encounter quickly ripened into a *Terry* stop justifying Rice's temporary detention.

### III. Conclusion

Based on the foregoing analysis, at the time Officer Mark Richardson pursued Defendant Shawn Rice, the officer had reasonable suspicion of criminal conduct to support the Defendant's stop and detention. Therefore, the handgun recovered at the time of the Defendant's detention will not be suppressed from evidence during the upcoming trial.

This 4th day of November, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge